IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM SANTIAGO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-966-NJR-DGW |
| ) | |
| PATRICK SEVERS, CARLA BURNETT, and ) | |
| JOHN DOE, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants Patrick Severs and Carla Burnett on June 6, 2014 (Doc. 40) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

Plaintiff, William Santiago, filed a Complaint on September 19, 2013 alleging that he was given inadequate medical care after he fell in the shower on November 20, 2011 while incarcerated at the Menard Correctional Center. In particular, Plaintiff alleges that Defendants Severs, Burnett, and John Doe[1] left him on the shower floor for at least 40 minutes after he fell

---

[1] Plaintiff has until August 22, 2014 to file an amended pleading naming the John Doe defendant.

and failed to provide medical care during that time period. He also alleges that a Dr. Fe Fuentes, a medical technician (Aindell), and Wexford Health Sources, failed to provide adequate medical care thereafter. Pursuant to a screening Order entered on November 8, 2013 (Doc. 7), Defendants Fuentes, Aindell, Wexford Health Sources, and the Illinois Department of Corrections were dismissed. Plaintiff was allowed to proceed on the following two claims:

> Count 1: Defendants Severs, Burnett and Lt. John Doe were deliberately indifferent to Plaintiff's serious medical needs when they left him lying on the shower floor in pain, in violation of the Eighth Amendment; and
>
> Count 6: Defendants Severs and Lt. John Doe were negligent under Illinois law in their care for Plaintiff.

Both Defendants are seeking summary judgment on the issue of exhaustion (Doc. 40).[2] Defendants argue that Plaintiff failed to exhaust a December 15, 2011 grievance and that, even if it was fully exhausted, it failed to identify any claim against Defendants Severs, Burnett, and John Doe. Plaintiff filed a response on July 9, 2014 (Doc. 49) arguing that he submitted his grievance to the appropriate authority but that he did not receive responses. Plaintiff also argues that the December 15, 2011 grievance should be sufficient to exhaust his administrative remedies as to the moving Defendants. A hearing pursuant to *Pavey v. Conley*, 544 F.3d 729 (7th Cir. 2008) was held on August 5, 2014 in which Defendants appeared by counsel and Plaintiff appeared by video-conference.

The parties agree that Plaintiff filled out a grievance dated December 15, 2011. This grievance is 4 pages long and is not marked as an emergency (Doc. 1, pp. 1-4). In each of the

---

The correct spelling of the named Defendants is Carla Burnett and Patrick Severs.

[2] As noted above, Plaintiff has yet to name the John Doe Defendant. However, the Motion for Summary Judgment argues that John Doe is also entitled to judgment as a matter of law.

Page **2** of **11**

copies of the grievance in the record, there is no notation that it was reviewed by a counselor or that it was reviewed by a grievance officer (or indeed that the Warden had determined that the grievance was not an emergency) (Doc. 1-1, pp. 1-4; Doc. 41-1, pp. 12-15; Doc. 49, pp. 22-25). Plaintiff testified, however, that the copies of the grievance in the record are hand-written copies (i.e. not photocopies) and that the check mark associated with submitting the grievance as an emergency was merely left off the copies. In a discovery request response, Plaintiff states that he sent the grievance to his counselor on December 15, 2011 but received no response; he then sent it to the grievance officer on January 17, 2012 but received no response; and that he sent it to the Administrative Review board on April 4, 2012 but received no response (Doc. 41-1, p. 7). The Court finds that Plaintiff is credible in his assertion that he properly submitted an emergency grievance on December 15, 2011 but that he did not receive a response from the institution.[3]

Plaintiff wrote to his grievance officer on January 17, 2012 inquiring of the status of the grievance (Doc. 41-1, p. 18). There is no written response in the record. However, Plaintiff has submitted a "return of grievance" response by the ARB: the letter indicates that a grievance dated December 15, 2011 was received by the ARB on September 25, 2013 and that it was being returned to Plaintiff as being filed outside the timeframe and because there is no counselor or grievance officer signatures (Doc. 41-1, p. 40). Plaintiff testified that he wrote no other grievances, other than the December 15, 2011 grievance, regarding the matters contained in the

---

[3] There was some argument at the hearing that Plaintiff had in fact submitted a grievance dated December 19, 2011 as an emergency grievance and that the December 15, 2011 grievance was not submitted as an emergency. An "Emergency Grievance Log" record indicates that an emergency grievance was received by the Warden on December 19, 2014 and was deemed to be not be an emergency on December 20, 2011 (Doc. 1-1, p. 15). Plaintiff testified that he did not submit a grievance dated December 19, 2011 and that the record in fact concerns the December 15, 2011 grievance. He further testified that he did not receive any response from the Warden on the December 15, 2011 grievance.

Complaint.

The grievance itself focuses of the medical care (or lack thereof) that Plaintiff received from Menard's healthcare services and primarily complains of the sick call procedure, the fact that Plaintiff has to tender a co-pay, and the inability to see a doctor as oppose to another type of healthcare provider. The grievance outlines, in detail, the care he received (or did not receive) from November 21, 2011, a day after the fall, to December 13, 2011 from Dr. Fuentes and a medical technician. With respect to the Defendants who remain in this case, however, Plaintiff only states:

> On November 20, 2011, during the 3-11 shift I slipped and fell in the showers:
> <a> The left side of my body (shoulder, arm, hand, side back) took the brunt of the fall.
> <b> While in the shower, immediately after my fall my left wrist started to swell and my hand started turning purple.
> <c> I really hurt my elbow and forearm because most of the impact occurred there.
> <d> c/o Seavers from the Upper's, a Lieutenant and med tech from the lowers all came into the showers and looked at my shoulder, arm, wrist, and hand.
> <e> The med tech stated that she would put me in to see a doctor the following day and gave me Ibuprofen 200 mg for pain and inflammation.

(Doc. 1-1, p. 2).

The grievance does not mention Defendant Severs or Burnett (who is presumably the medical technician mentioned above) or the fall in the shower at any other point in the grievance. The grievance also does not mention or refer to a John Doe or other unknown correctional officer or lieutenant. There is no statement or complaint in the grievance that any of these remaining Defendants failed to provide adequate medical care or that they were negligent in some manner. As relief, Plaintiff indicates: "I want to be seen by a doctor immediately. For your deliberate indifference to my pain and suffering, medical negligence and breach of the Wexford Medical

Contract, pay me $1,000,000.00." (*Id.*).

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.


42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer

("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840. Regulations do not indicate that an inmate must resubmit his grievance to a counselor or grievance officer for review. *See Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however,

when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

The record reveals that the December 15, 2011 grievance was deemed an emergency grievance and that the Warden responded, indicating that grievance was not considered an emergency, on December 20, 2011. Plaintiff was required to do nothing more to ensure that his grievance was then directed to the counselor for a response. *See Thornton*, 428 F.3d at 694; *Glick v. Walker*, 385 Fed.Appx. 579, 583 (7th Cir. 2010). Even if the December 15, 2011 grievance was not labeled or submitted as an emergency, the record reveals, and this Court finds, that Plaintiff properly submitted the grievance for review and that the prison officials failed to respond. As such, the grievance process was unavailable to Plaintiff and this grievance should be deemed exhausted.

However, the grievance does not complain of any action (or inaction) by Defendants Severs, Burnett, or a John Doe; it merely refers to them in order to provide context for Plaintiff's complaints about other medical providers and Wexford policies. The regulations provide that a grievance should contain "factual details regarding each aspect of the offender's complaint . . ." ILL. ADMIN. CODE TIT. 20, § 504.810(b). One of the functions of a grievance is to allow "prison officials a fair opportunity to address his complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011); *Jones*, 549 U.S. at 219 (Noting that requiring exhaustion of administrative remedies has a number of "benefits": "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record."). It follows that if a grievance does not assert some complaint about staff

conduct, the prison would have no opportunity to address the complaint and the Plaintiff cannot be found to have exhausted such a claim before this Court. Plaintiff names Severs and Burnett in the grievance but does not offer any explanation or statement or indication that he was dissatisfied with their interaction with him or their reaction to his fall. Rather, he merely mentions them in the grievance to provide context for his main complaint, the he was not given appropriate medical care in the days following his fall.

At the hearing, and in his brief in response to the Motion for Summary Judgment, Plaintiff indicates that he only grieved a single issue in the December 15, 2011 grievance: the lack of appropriate medical care by Dr. Fuentes. Plaintiff stated in his brief that it was his understanding that prison officials and the ARB are in the habit of only referring to one or some of the complaint raised in a grievance and that they rarely address all the complaints made in a grievance. Thus, an inference to be drawn is that he intended to raise each claim/complaint separately and that he intended to submit a second grievance (presumably regarding the Defendants herein) after he received a response to the December 15, 2011 grievance. As noted above, no response was made to the December 15, 2011 grievance and Plaintiff testified that he did not file any other grievance regarding the fall. The December 15, 2011 grievance accordingly fails to state a complaint against Severs and Burnett, wholly fails to mention any John Doe Lieutenant, and did not give the prison a fair opportunity to resolve any issues with respect to these three individuals. The grievance does not comply with Illinois' Administrative Code as to Severs, Burnett and John Doe; Plaintiff therefore failed to exhaust the claims that remain in this lawsuit against them.

With respect to Defendant John Doe, Federal Rule of Civil Procedure 56(f) provides that

"[a]fter giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant." John Doe is a nonmovant in that he has not been identified by Plaintiff, he has not been served with process, has not entered an appearance, he is not represented by an attorney, and he is not listed as a moving Defendant in the Motion for Summary Judgment (Doc. 40). Defendants' arguments, however, are made on behalf of Defendant John Doe and apply with equal force to him as they do with respect to the named Defendants. Defendants' Motion, then provides sufficient notice to Plaintiff that they are seeking summary judgment as to John Doe. *See Celotex Corp.*, 477 U.S. at 326 ("district court are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence"). This Report and Recommendation also provides notice to Plaintiff, and an opportunity to respond, that summary judgment may be granted in favor of John Doe. Accordingly, this Court finds that Plaintiff has not exhausted his administrative remedies as to John Doe for the reasons set forth above.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that:

1. The Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants Patrick Severs and Carla Burnett on June 6, 2014 (Doc. 40) be **GRANTED** and that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies as to Defendants Severs, Burnett, and John Doe;

2. Counts 1 and 6 be **DISMISSED WITHOUT PREJUDICE** and that the Clerk of Court be **DIRECTED** to close this action accordingly; and

3. The District Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: August 7, 2014**

                                      **DONALD G. WILKERSON**
                                      **United States Magistrate Judge**